We'll start with 22-1264, Infocision Management Corporation v. Griswold. May it please the court, my name is Kara Donnelly and I represent Appellate Infocision Management Corporation. I'd like to reserve three minutes for rebuttal. We're here today because the Colorado Secretary of State has enforced a content-based prior restraint on the appellant's prospective charitable solicitations based on the settlement agreement with no finding of wrongdoing. This violates Madigan and 90 years of Supreme Court precedent. This case involves two kinds of prior restraint, a classic prior restraint which stands due to protected speech and an administrative prior restraint which subjects a protected speech activity to regulation and charitable solicitation statutes are unique as they involve the granting of a license to deliver a specific message. They regulate a protected speech activity. The act determines whether an applicant should be licensed under the act based on the content of the message. The Secretary... Before you get to the merits, we have a jurisdictional issue on what risks are you... do you think that there's a substantial... what substantial risks do you... does your client face that a decision by us could protect you from? Sounds like everything's done that can be done. Absolutely not done, Your Honor. I'd like to, as an initial matter, the deprivation of First Amendment rights for any length of time is an injury redressable by this court. The law, the challenge law, the statute remains on the books, unchanged. Yeah, but to challenge the law, you have to face some risks that will be enforced against you. What's that risk here? The Secretary has not backed down from future enforcement. In fact, she stated that she will enforce this statutory ban against imposition or any other registrant, any other professional solicitor that discloses an injunction, even if in a settlement agreement in the future. So what risk... what risk do you have that you'll be facing that situation where you have an injunction from another administrative body, say? Well, what's your risk there? Any... there's two points on risk. One is the secondary and collateral consequences that flow from the denial that's still on the books. The denial is still there. It's unchanged. And what is likely to happen as a result of that? Colorado has... expired, right? The statutory ban period has expired. InfoCision has, in fact, registered under the Act. So you're concerned about other states? Other states and... But the other states haven't expressed any interest. As far... my understanding from the record is that InfoCision has not been sanctioned by any state except Colorado based on the FTC injunction. Is that right? That is correct. So what... so why do you think some state would now enforce a ban based on the Colorado sanction? I understand your question. The Nonprofit Alliance Foundation briefed us well in an amicus brief before this court. There are three states, Mississippi, Florida, and New Jersey, that are required by law to deny InfoCision's registration if it discloses this denial moving forward. In its registrations to date, InfoCision has explained its challenge in this denial. And so these other states have not taken any action against InfoCision as this challenge is pending. As soon as that denial is final, if this court were to not hear this issue on the ground of mootness or otherwise decide against InfoCision, then those other states are required by law to deny that registration, resulting in the need for InfoCision to file separate multiple lawsuits challenging these other jurisdictions the exact same issue challenged here today. Well, you say required by law, but isn't it more accurate to say they have a law in the books? And then the question is, would they choose to enforce that law? Is there anything in the record to indicate that they would? Yes, the Secretary has stated that she's obligated by law to enforce all laws on the books, and there's no reason to think... No, I'm talking about the other states. Do you have anything in this record to show that any of them would take action against your client? The laws that require them to do so, it's certainly... Now, that isn't my question. We know there's a law on the books in a state like Mississippi, for example, but do you have any evidence that your client is at risk of enforcement of that law, apart from the fact that it's just on the books? Has the state said anything? Do we have anything in the record other than speculation? It's not in the record, but I can tell you that Mississippi is active in enforcement in this regard. Well, does the state law in Mississippi, you said Mississippi, New Jersey, and Florida, does the statute in those states encompass an injunction by the FTC? Does it encompass an injunction by the FTC? Does it encompass an injunction by the FTC? Does it encompass an injunction by the FTC? The statutes I'm referencing base their denial on another state's denial. Some of those states, Florida is one that does have a ban, an injunction similar to Colorado's, and Florida took a less restrictive alternative in response to the disclosed settlement agreement with the FTC. What Florida did, and I can point to the record where this is, what Florida did is said, okay, if the position agreed that you're going to abide by the terms of the settlement agreement, which you've already agreed to, then we'll grant your nuisance, and the position did that. And why wouldn't it continue to do that? Because the denial is a separate provision under state law in Florida, so it's required to deny based on that denial, and there's no indication that it would do that again. So how long has the denial been on the record in Colorado? The secretary chose to deny the registration in 2019, so approximately three years. And those three states haven't done anything despite that denial being on the record? Because in its applications, it has explained to those states that it's challenging, so it's not final. Are those two states? Volume two, I believe it starts on page 114. It's 114 and 116. The narrative explanation is on 114 of volume two, and the actual agreement with Florida is on 116. What about the other two states? Mississippi and New Jersey have not taken any action because of the narrative explanation provided on page 114. How do we know it's because of the narrative explanation? You stated that your client did explain that it's under challenge. How do we know that that's the reason why those states didn't pursue this? This is not in the record, so you can consider it or not, but from our experience, Mississippi is very active in enforcing this provision, and they would have fought for that. Don't you think you need to make a record to show that you're at risk? I think the secondary collateral consequences, the secondary collateral injuries, is strong enough to overcome any mootness. In addition, it's capable of repetition and yet invading the view. Why is it capable of repetition? Does your client intend to violate one of these laws in the future? Absolutely not, but as the Nonprofit Alliance Foundation briefed, there's a significant risk that other states, in Colorado for that matter, can include any qualifying injunction language in settlement agreements, which could then start this domino effect of denials and would be an opportunity, a tool for states to censor speech moving forward, certainly censor speech. The FTC injunction is a permanent injunction, correct? Correct. So it's still in force even though it's been over five years? That's absolutely correct. So Colorado's view is even though it's still in force, it no longer prevents your registration? At this point, Colorado has reinstated the registration, so that's our understanding of the view. Yes, the injunction is a permanent injunction to abide by the law. Go to the mayor's. Thank you. The act in introducing the content issue here, the secretary derives her authority under the act based on the message that's included in the speech. The act is banned only if the speech contains a charitable solicitation message. Accordingly, this court should overrule the standard of review applied to prior experience on charitable solicitation in GIANI and apply strict scrutiny in this case for two reasons. First, it's a classic prior experience unprotected speech. Second, it is content-based. Each of these reasons necessitates strict scrutiny in its own right. The value of speech is its content and not its source. The core issue in this case is the specific message targeted in the end by prior restraint. The Supreme Court has ruled four times that charitable solicitation is entitled to full protection under the First Amendment. It is a matter of constitutional indifference whether the message is delivered by the charity directly or through its chosen professional representative. Imposition acts as an agent for reputable, well-known, respected charities who hire imposition to deliver its services, which they have drafted or approved. In order to deliver charitable solicitation, in Colorado, non-profits and professionals speaking under the act must first register with the Secretary's office. No charitable solicitation message may be uttered unless the campaign is first registered. On behalf of its charity clients, imposition is required to make specific filings and disclosures, file a bond contract, a solicitation notice in advance of the speech, provide periodic and final reporting, and abide by the law of Colorado. The record is clear here. Imposition has served clients in Colorado for more than 30 years. Why don't you try to distinguish the Austin case on the matter of this being content-based? I think the Austin case provides extremely helpful information, particularly on page 1473 of that case. Austin explains, like Cantwell, which targeted religious solicitation for regulation, this law is plainly content-based. The law and the ban apply only if imposition's message contains a charitable solicitation. It doesn't regulate all solicitations. It targets and restricts, and the ban silences, charitable solicitations. But for that charitable solicitation message, the law and the ban do not apply. I think the city of Austin-de-Brieu makes it very clear that this, under the court's most recent reading of Reed, this would be very plainly content-based. The challenge ban prohibited imposition from delivering specific content for a statutory period of five years, which the secretary determined to enforce for three years. But the restriction is limited to paid solicitors, only adds a layer of content-based discrimination, as the District of Colorado found with respect to this exact same statute in Norton. The secretary argues that this is merely speaker-based, but that argument here fails for all the reasons it failed in Riley, Norton, and Kissel. As the Supreme Court explained in Riley, there is no difference between compelled silence and compelled speech. Both necessarily alter the content of the speech. The Supreme Court has made clear that with respect to prior restraints, just to let you know, that's what, that's not, we don't subtract three minutes from your time because you're reserving it, you have to handle your own time. Prior restraints are unconstitutional unless the result from the speech is both great and certain and cannot be militated by less intrusive measures. This is strict scrutiny or certainly not what strict scrutiny and this restriction cannot pass that standard. Thank you. Ms. Buckley. Would you start by addressing mootness? Yes, I'd be happy to address mootness. As the court mentioned, there are no collateral consequences in the record, and in fact, imposition statements here today demonstrate a degree of discretion that is available to those other states that is certainly not present in whether those states will intend to enforce the provisions of their laws. But it is true that they go forward with this blemish on the record, which is that they have been enjoined and denied in Colorado. And so now every time they file in any other state, they have to report this, much like in a criminal situation where somebody has a prior conviction. That's not without consequences because they're at the mercy of these other states like Mississippi, Florida, and New Jersey that have laws on the books that say, if you've been denied in any other state, we will deny you here. Isn't that enough for collateral consequences to prevent mootness here? It's not enough. Paid solicitors disclose a large amount of information in every state when they file, including events dating back decades. So imposition, this is part of what imposition does when it applies to register as a paid solicitor in all the states with paid solicitation laws. And I would also add that it's part of the calculus of settlement that a settlement in one jurisdiction can have consequences in other jurisdictions. And that is something that businesses need to evaluate before it enters into a settlement. Well, which is probably why their settlement expressly denied that they had committed any wrongdoing, right? There's nothing in the record as to why the settlement does not contain an admission effect. And I will add that a review of FTC settlements, even cases where there seems to be a large amount of information about the paid solicitor's fraud does not include an admission of guilt on the part of the settlement party. Also not in the record. Yes, correct. Well, what happens if we decide this is moot? What then happens? Ordinarily, if it's moot, then we vacate the district court decision, right? There are cases which have left the district court decision in place when a case becomes moot on appeal. Well, that's ordinarily when the party who lost does something to create the mootness, which is not the situation here. In fairness, since they don't have a right, if this is moot, since InfoCision has no opportunity to challenge this provision, we should set aside the district court ruling, shouldn't we? And in fact, go further and vacate the agency's decision, banning them, the Secretary of State's decision. Shouldn't it, if this is moot, shouldn't we clean the slate and wouldn't that eliminate any possibility of collateral consequences in the future? And why wouldn't you agree to that? My client might not agree to that because there was a lot of controversy at the time of the agency decision. That always happens when something's moot. But if you're trying to see a decision by us that they can't challenge the ruling against them, then in fairness, that ruling should be vacated, should it not? Shouldn't it go back to square zero in that circumstance? Why would that be improper? It seems to me fundamentally fair that if you don't have a right to challenge some ruling against you, then that ruling should be vacated. We do that even in criminal cases when the defendant dies, the defendant gets a clean record. If InfoCision ran out of time to challenge this law, it's because it waited until 2019 to bring a challenge, or rather when it could have brought a challenge beginning in 2018. So there was plenty of time to adjudicate this case, but there was a delay. And there was a live case in controversy, and the agency decision certainly should be remaining in place. They don't have any reason, there was no reason for them to delay that. I thought what happened was the first time the decision was made to deny them their license, it turned out that some timeliness bungle that was set aside. So they had, I'm not sure they had any case they could bring until the ban was imposed properly, and when was that? A year later when they applied again in 2019. And then they immediately challenged that. So you're saying they should have brought a case challenging it before they were subject to it. We might have had a problem with that. The initial 2018 denial explained the reasons for the denial. It was based on the injunction. So under 10th Circuit Procedure. But it had no effect on them. It could have brought a reinforcement challenge on that basis. That there was a threat. I'm sorry? That there was a threat against them. Well, if... A threat of prosecution, essentially. Go ahead. If we're not convinced that they improperly delayed, do you have any other reason why if we find it moot, we shouldn't vacate? I don't. And that's typically what we do. If it's moot, we vacate. And what I'm thinking in terms of vacate is not just vacating the district court decision, but vacate the administrative action. The ruling against them. Because they never had a chance to fight that in court. There's not a challenge to the administrative proceeding. Only a challenge to the laws in federal court. What imposition could have done under the Colorado APA is bring a challenge in state district court, which would have directly challenged the administrative decision itself of the Colorado APA. It did not do that. It did attempt to bring APA claims before the district court, but those were dismissed on the basis of sovereign unity. So this court does not have jurisdiction to vacate that agency proceeding. It could declare the laws unconstitutional and declare what their secretary did to be unconstitutional. But it would have to go through state court in order to directly attack the decision of the state. Well, let me go to the merits. The way this law is written, if someone is enjoined without any finding of any fraudulent conduct, they can be denied the opportunity to register as a paid solicitor in Colorado. Sounds like over breath to me. You're sweeping in people who there's no finding of conduct that you want to prohibit. The law is designed to prevent solicitors who have been subject to censure in another jurisdiction from packing their bags, coming to Colorado, and bringing deceptive practices to Colorado. So it is designed to prevent fraud rather than just punish fraud after the fact. But you have no finding of fraud. I mean, that'd be great if the FTC had found that they committed fraud. I don't think you would have any concern here. Isn't that Gianni? But if you don't have a finding of fraud, what you're saying is if you consent to be enjoined for any reason whatsoever, we're going to bar you here on the assumption that there's a connection between that activity and preventing fraud. And I think that connection is tenuous. Well, it's not an injunction. It's a specific type of injunction. It's for a paid solicitor who has been enjoined from engaging in deceptive practices related to charitable solicitation. So it's a very specific type of injunction that this FTC injunction does absolutely need. Well, in terms of the—when we have restraints like this, there's something of a reasonableness test. I don't think it's framed that way. But the risk is that then there won't be any settlements. Everyone will litigate to the hilt because you can't agree. InfoCision said, we didn't do anything wrong, but we'll pay some money and we won't do this thing anymore. And maybe that's a good way to deal with it. And if they then found that 50 states then prohibited them from doing anything for five years, they'd have a tremendous incentive to litigate that. And perhaps that's the reason why there are only, I think, four states that have this sort of provision. What do the other 46 states do? The fact that 46 states think that they can properly regulate charitable solicitation without this type of provision might indicate it's not all that necessary. How do you respond to that? It seems like an overkill, as Judge McHugh is pressing you on. There's an extensive record in Colorado before the Charitable Solicitations Act was passed, both in the legislative declaration and the history we cite and the Colorado nonprofit associations, to make it brief, of the rampant fraud that was occurring in Colorado by solicitors that would come in here and completely unregulated. And so in order to protect Coloradans and prevent this from happening, the law enacted specific licensing requirements, including this requirement that the sort of rare bird that's been enjoined in another state from engaging in deceptive practices related to charitable solicitation. Doesn't every provision have to satisfy the constitutional scrutiny? I mean, the fact that you have a law, that makes a lot of sense. To have this particular provision, which might undermine, in some ways, enforcement activity by other states or by the FTC even. I would imagine the FTC would have a problem if states induced all the people the FTC is regulating to fight to the end against the FTC because it's a life or death matter for the solicitor at that point. The point is, you can't just say there's this terrible problem, we've got to do something. You've got to defend this specific provision. Is there anything in the history explaining that particular provision and what's happened in other states? Of course. It does have to be narrowly tailored. There is nothing in the legislative history that specifically addresses this provision related to injunction. Could I just, as a follow up, in responding to this question that my colleagues have been presenting to you the last few minutes, does your answer differ based on the standard of review? In other words, does it differ if strict scrutiny is the standard as opposed to intermediate scrutiny? The justifications as to the tailoring are the same for our response to intermediate scrutiny or strict scrutiny. Well, the justifications are the same, but the standards are different. So does it pass strict scrutiny or not? I assume your argument is that it passes intermediate scrutiny, but would it pass strict scrutiny? It would pass strict scrutiny because of the significant anti-fraud purposes of the Act. Let me ask a related question. How can the Act be narrowly tailored when it applies to paid solicitors but doesn't apply to unpaid solicitors? In other words, why isn't the concern about deceptive solicitation the same for charitable organizations that do their own fundraising, as many of them do? I would say charitable solicitations are subject to a different regime, including disclosure laws. But the legislative history here does demonstrate why the paid solicitors have different financial incentives when fundraising than charities do themselves. And this is designed to prevent and protect both the public and the charities who are the clients of the charitable solicitors. But an unpaid solicitor could solicit funds fraudulently, too. They could, yes. But this is designed as a licensing scheme to look at the paid solicitors who are coming to Colorado to operate. And what Siddivas and Reed are focused on is whether the provision, the statutory provision itself, is content neutral in deciding what level of scrutiny should apply. I just want to make sure I understood your answer. Are you saying that there are other provisions in Colorado law that address fraudulent or misleading fundraising by the charitable organizations themselves? General fraud laws. And there may be provisions of the Colorado Consumer Protection Act that apply, too. I see that my time is up. It's not on the clock. It's up. Any further questions? Thank you. For the reasons I don't read, we ask that you affirm the decision to allow. Thank you. Would you start by explaining why you think if we vacate the district court decision that would eliminate the threat of collateral consequences? Yes. If you vacate the district court's decision, you will then, well, it depends, actually, if you are able to vacate the administrative court ruling, too. Because if the administrative ruling is a denial, the denial stays on the books. The problem here is the denial. As long as that's on the books, it is a live case of controversy. And its effects, its secondary and collateral consequences continue. But it's on the books already. And the other states didn't proceed. At least the three states that could have proceeded didn't proceed because you explained it was under challenge. That's the fact that you pursued your challenge. But because the clock ran out, you couldn't address the merits in an appeal. Don't you think that would have any effect on those states that appear to be exercising some discretion in the appeal? I think discretion, no, I don't think so. I think the Secretary's argument here is that she has no discretion. I think the other states would argue the same. If they have a statutory requirement that says that. Well, does the statutory requirement say unless it's under challenge? They've already exercised their discretion in the other states, have they not? It's not a final denial. I think they're characterizing this as not a final denial because we don't have a final ruling on the merits because we haven't completed the appeal. The position's appeal is not final. So there is no final denial yet. So once the final ruling comes out, if the district court decision is vacated, then there's an administrative ruling that there was a denial. So the position would still have to disclose that. So I think that would be a problem for the position. It would result in potentially additional litigation challenging the very same prior restraint issue here today. I do think that vacating the district court judgment would help prevent terrible speech moving forward and that the district court redefined the legislature's interest here, not as the prevention of fraud, but the preemptive prevention of fraud. And that's really problematic because it's based on a prior restraint. So I think we've got—it would significantly help in that we remove the error that is in the district court's decision—the error is the district court's decision—but it's not going to, I think, cure the denial reporting requirement so long as there is a denial remaining on the books. What we need is—the addressability is the reversal of the denial itself. If the denial can be reversed by this court, the secondary and collateral consequences can then be resolved. Any questions? Thank you, counsel. Case is submitted and counsel are excused.